IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **RICHARD D. CLARK,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11CV00040 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY** | ) | |
| | ) | |
| Defendant. | ) | |

*Lewey K. Lee, Lee & Phipps, PC, Wise, Virginia, for Plaintiff. Nora Koch, Acting Regional Chief Counsel, Region III, Edward Tompsett, Assistant Regional Counsel, Allyson Jozwik, Special Assistant United States Attorney, Social Security Administration, Office of the General Counsel, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Richard D. Clark filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-433 (West

2011 & Supp. 2012) and 1381-1383f (West 2012).  Jurisdiction of this court exists under 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Clark applied for benefits on March 7, 2008, alleging disability beginning January 1, 2007.  His claim was denied initially and upon reconsideration.  A hearing was held before an administrative law judge ("ALJ"), at which Clark, represented by counsel, and a vocational expert testified.  The ALJ issued a decision on March 5, 2010, finding that Clark was not disabled.  The Social Security Administration's Appeals Council denied Clark's request for review and the ALJ's decision became the final decision of the Commissioner.  Clark then filed his Complaint with this court seeking judicial review of the ALJ's decision.

The parties have filed cross motions for summary judgment, which have been briefed.  The case is ripe for decision.

II

Clark challenges the ALJ's decision as unsupported by substantial evidence based only on the fact that the ALJ accorded less weight to the consultative psychological examination performed by B. Wayne Lanthorn, Ph.D., and therefore failed to properly assess the effect of his mental impairments on his residual functional capacity ("RFC").  Because Clark's argument is focused on the ALJ's

assessment of his mental health, the recitation of the facts will be limited to the evidence of his mental impairments.

Clark was 42 years old as of the date of his administrative hearing, making him a younger individual under the regulations. *See* 20 C.F.R. § 404.563(c), 416.963(c) (2011). Clark completed the seventh grade. He later became certified in welding and auto-body work. His prior relevant work included auto-body repair, coal mine mechanic, and heavy equipment mechanic in a coal mine.

At the time of the alleged onset of his disability, Clark was being treated by William McIlwain, M.D., for his back problems. In April 2007, based on Clark's flat affect and multiple stressors, the nurse practitioner in Dr. McIlwain's office recommended Clark follow up with Richard Salamone, Ph.D., for psychological evaluation.

Clark was seen by Dr. Salamone in August 2007. Dr. Salamone noted that at the time of the examination, Clark was seeking disability but was also looking for work in the mining and automotive body industries. Clark was living with a girlfriend and was exercising regularly. Dr. Salamone observed that Clark was alert and oriented and found no evidence of psychosis based on Clark's speech, behavior, and history. Clark denied any symptoms of panic attacks, agoraphobia, or generalized anxiety. However, testing indicated that Clark is an individual who has great difficulty or unwillingness to disclose or discuss problems, particularly

-3-

Case 2:11-cv-00040-JPJ-PMS   Document 15   Filed 06/27/12   Page 3 of 11   Pageid#: 433

psychological. Dr. Salamone diagnosed Clark with adjustment disorder with depressed mood. Dr. Salamone felt that Clark's adjustment disorder was largely secondary to the work injury, associated pain, and changed life circumstances (i.e. his unemployment). Dr. Salamone recommended consideration of an antidepressant such as Cymbalta and behavioral follow-up focusing on relaxation and biofeedback modalities and improved coping. Dr. Salamone did not give Clark any psychological restrictions. Dr. McIlwain's office prescribed Cymbalta as recommended by Dr. Salamone and sought approval to incorporate the modalities suggested into his treatment.

In June 2008, E. Hugh Tenison, Ph.D., a state agency psychologist, reviewed Clark's record. He found that Clark had mild difficulties in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence, and pace, and no episodes of decompensation. Dr. Tenison noted that Clark was not receiving therapy or counseling and that the evidence suggested that Clark was capable of handling his daily routine, transportation, and medications. Richard J. Milan, Ph.D., another state agency psychologist, also reviewed the record and concluded that Clark had no difficulties in activities of daily living, mild difficulties in maintaining social functioning and concentration, persistence, and pace, and no episodes of decompensation. Dr. Milan opined that the evidence showed a non-severe mental impairment.

In May 2009, Clark presented to B. Wayne Lanthorn, Ph.D., for a consultative examination upon referral by his attorney. Dr. Lanthorn noted that other than the evaluation by Dr. Salamone, Clark had never had any formal psychiatric or psychotherapeutic intervention. Clark told Dr. Lanthorn that he does his own laundry and cleaning, cooks for himself, and goes to the grocery store. Clark also socializes with his brother and other friends. Dr. Lanthorn observed that Clark's affect was flat and blunt and that he spoke in a low monotone. Dr. Lanthorn described Clark's mood as "somewhat depressed." (R. at 340.) Dr. Lanthorn found that Clark had an IQ of 79, placing him in the boarderline range of intelligence. Dr. Lanthorn also assessed Clark's global assessment of functioning score at 50.

Dr. Lanthorn found that Clark had mild to moderate difficulties sustaining concentration and persisting in a task, mild to moderate difficulties interacting with others, and moderate difficulties adapting to changes in work requirements. However, in his statement of Clark's ability to do work-related activities (mental), Dr. Lanthorn opined that Clark would have marked limitations in handling complex instructions; extreme limitations in making complex work decisions; marked limitations in interacting appropriately with the public, supervisors and co-workers; and marked limitations in responding appropriately to usual work

situations. Finally, Dr. Lanthorn opined that Clark's impairments and treatment would cause Clark to miss more than two days of work a month.

At his administrative hearing, Clark testified that while he had been on Cymbalta in the past, he was not currently taking the medication and had not taken it for a year. Clark confirmed that he had only seen Drs. Salamone and Lanthorn once each. He described his symptoms of depression as having lost interest in everything, an inability to focus, nervousness, and dislike for large crowds. He also said he gets angry easily and stays upset. The ALJ posed a hypothetical to the vocational expert of an individual with Clark's background and certain physical limitations and work limited to simple, routine, repetitive, and unskilled and involving only occasional interaction with the public. The vocational expert testified that while Clark could not perform his past relevant work, he could perform work that existed in substantial numbers in the national economy.

In her decision, the ALJ found that Clark had severe impairments consisting of a history of adjustment disorder, learning disability (mathematics), a history of degenerative disc disease of the lumbosacral spine, borderline intellectual functioning, and anxiety disorder. She found that none of these impairments met or medically equaled a listed impairment. The ALJ found that Clark retained the RFC for a range of simple, routine, repetitive, unskilled light work with no more than occasional interaction with the public. Based on the testimony of the

vocational expert, the ALJ found that Clark could perform work that existed in substantial numbers in the national economy and was not disabled.

Clark argues that the ALJ's decision is not supported by substantial evidence. For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A); 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4) (2011). If it is determined at any point in the five-

step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.* The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Clark argues that because the ALJ improperly accorded little weight to the limitations assessed by Dr. Lanthorn in his report, the ALJ's RFC assessment was not supported by substantial evidence.

-8-

The RFC is based on all of the relevant evidence in the record, including the claimant's subjective complaints, the objective medical evidence, and the medical opinions in the record. *Felton-Miller v. Astrue*, 459 F. App'x 226, 230-31 (4th Cir. 2011) (unpublished). The ALJ considered Dr. Lanthorn's opinion but accorded it little weight both because it was rendered as part of a one-time evaluation at the request of Clark's attorney, and because the opinion was inconsistent with Dr. Lanthorn's minimal clinical findings and with the fact that Clark has essentially never been treated by a mental health professional.

There is no doubt that Clark saw Dr. Lanthorn only one time for a consultation at the recommendation of his attorney. As such, Dr. Lanthorn's opinion is not based on a long-term treating relationship and the particularized knowledge and perspective that such a relationship can provide. *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (2012); s*ee also Elkins v. Astrue*, No. 2:09CV00025, 2010 WL 723716, at *4 (W.D. Va. Mar. 2, 2010).

In addition, Dr. Lanthorn's extreme restrictions conflicted with his own clinical findings and the evidence as a whole. In his medical notes, Dr. Lanthorn observed only mild to moderate difficulties with concentration and task persistence and with interacting with others. Dr. Lanthorn observed only moderate difficulties with changes in work procedures and requirements. The much more restrictive mental limitations contained in Dr. Lanthorn's statement of Clark's mental ability

-9-

to do work simply do not comport with these observations. Further, the bulk of the evidence in the record showed that Clark's mental impairments caused minimal limitations in his daily life and ability to function. Clark never sought regular treatment with a mental health professional and his activities of daily living are remarkably unaffected by his mental impairments. Dr. Salamone found that Clark had no psychological restrictions and both state agency psychologists found only mild to moderate limitations. When a physician's opinion is not supported by the evidence, the ALJ may give the opinion little weight. *See Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

Clark argues that the ALJ should have given Dr. Lanthorn's opinion greater weight that those of Dr. Salamone or the state agency psychologists because Dr. Lanthorn's opinion occurred more recently in time and the other opinions are, therefore, stale. However, as noted, in determining the RFC the ALJ is to take account of all of the evidence in the record. The ALJ did so here. She considered Dr. Lanthorn's opinion as well as the other opinions as to Clark's mental health. While she accorded Dr. Lanthorn's opinion little weight, she incorporated mental health limitations into the RFC assessment. *See Jordan v. Astrue*, Civil Action No. BPG-09-1959, 2010 WL 5437205, at *4 (D. Md. Dec. 27, 2010) (finding no error in ALJ relying on opinion given without access to complete medical record because ALJ reviewed and considered complete medical record in determining

RFC). The ALJ is not required to give Dr. Lanthorn's opinion significant weight just because it is the most recent opinion when it is contradicted by Dr. Lanthorn's own notes and all of the other evidence in the record. The substantial evidence supports the ALJ's RFC determination and conclusion that Clark is not disabled.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: June 27, 2012

/s/ James P. Jones
United States District Judge